IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **ERIK B. CHERDAK** | : |
| **Plaintiff,** | : |
| v. | : Case No. 1:11-cv-00169 (LO/JFA) |
| **RACK ROOM SHOES, INC.** | : |
| **Defendant.** | : |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION TO STRIKE CERTAIN
UNTRUTHFUL CONTENT FROM DEFENDANT'S INITIAL
MARKMAN CLAIM CONSTRUCTION MEMORANDUM (ECF 127)**

**I.   INTRODUCTION**

In Defendant's Motion for Summary Judgment Brief (ECF 87), Defendant made material misrepresentations about the prosecution history of the Cherdak Patents. Plaintiff informed Defendant of the existence of these errors at that time, and asked Defendant to withdraw its motion. *See* **Exhibit 1**, October 17-18 e-mail exchange between Daniel Ward and Bill Rudy. On October 18, 2011, the Court *sua sponte* denied Defendant's Motion for Summary Judgment. *See* ECF 99. As a result, Plaintiff did not pursue his effort to rid the record of Defendant's misrepresentations. Those very misrepresentations have now returned in Defendant's *Markman* brief, and they must be stricken.

Plaintiff's Motion to Strike is timely and necessary given the important claim construction tasks now before the Court and which are still being briefed in this case. Plaintiff seeks to strike pages 12 and 13 of Defendant's Initial *Markman* Brief (ECF 127). Plaintiff's Motion to Strike presents the same issues Plaintiff's counsel raised to Defense Counsel in mid-

October when Defendant and its counsel asserted the same untruthful arguments to the Court in support of Defendant's then-pending Motion for Summary Judgment of Non-Infringement and Invalidity. *See* **Exhibit 1**, October 17-18 e-mail exchange between Daniel Ward and Bill Rudy.

Defendant has now <u>twice</u> made serious misrepresentations of fact to the Court that, if believed by the Court, could cause the Court to <u>improperly</u> apply legal principles and limiting doctrine *sub judice* that are not applicable. If the Court were to believe or otherwise give credit to Defendant's false statements, the Court might improperly apply legal principles contemplated by the Doctrine of Claim Scope Disavowal, which could significantly prejudice Plaintiff.

For the reasons stated herein, Plaintiff requests that the Honorable Court Grant Plaintiff's Motion to Strike Certain Matter from Defendant's Initial Markman Claim Construction Papers and, in particular, pages 12 and 13 thereof, and grant all other relief the Court deems just and proper under the circumstances.

## II. ARGUMENT

A Motion to Strike is properly presented by a Plaintiff against a Defendant when Plaintiff uncovers material misrepresentations in Defendant's papers submitted to the Court and Defendant continues to advance such material misrepresentations for no good purpose and, instead, to harass and burden the Plaintiff. Fed. R. Civ. P. Rule 12(f).

Plaintiff seeks to strike only two (2) pages from Defendant's *Markman* Brief (ECF 127) due to the untruthfulness of the statements and arguments made by Defendant in that section. While the remainder of Defendant's *Markman* Brief has a lot of holes and puts forth meritless attorney arguments, Plaintiff will leave that "Swiss cheese" for another day.

Spanning pages 12 and 13 of Defendant's Initial Markman Brief (ECF 127), Defendant falsely misrepresents certain very important facts in connection with the initial examination

proceedings related to U.S. Patent No. 5,343,445 to Cherdak. Additionally, Defendant argues for application of claim scope limiting doctrine based on such falsehoods.

In particular, beginning on page 12 of Defendant's Markman Papers, Defendant states:

> Cherdak himself also unequivocally distinguished the '445 Patent over potentially invalidating prior art during prosecution by arguing that LEDs that emit light for more than all of the period of time that the shoe is off the ground and in the air do not provide an indication of the amount of time that the shoe is "off the ground and in the air." <u>In initially rejecting the claims of the '445 Patent, the Examiner cited U.S. Patent No. 4,848,009 to Rodgers, which discloses a shoe with a timer and LEDs in which the timer turns the LEDs off when the shoe is stable. (Bass Decl. Ex. D at 1:5-29) The Examiner argued that the LEDs on the Rodgers shoe could be used to provide an indication of the time that the shoe was "off the ground and in the air," thereby rendering Cherdak's claims invalid. (Bass Decl. Ex. C at pp. 13-17). In response, Cherdak argued that the LEDs on the Rodgers shoe "are sometimes energized while the shoe remains on the ground." (*Id.*).</u>

ECF 127 at 12 (emphasis supplied). These statements are patently false. At **NO** time during the prosecution of the application giving rise to the '445 Patent did the Patent Examiner reject the claims of the '445 patent and cite Rogers '009 in such a rejection. Nothing could be further from the truth. A copy of the entire prosecution history related to the application giving rise to the '445 Patent has been attached hereto at **Exhibit 2**.

In an Office Action mailed December 21, 1993, the only rejection presented by Examiner was a rejection of the claims then pending on formal grounds under 35 U.S.C. § 112, First Paragraph, in correspondence to a single objection to the specification based on the same statutory section. *See* **Exhibit 3,** 12/21/93 Office Action. Defendant, ignoring the actual prosecution history related to the '445 patent, seeks instead to engage in revisionist history in an attempt to unjustifiably and improperly limit the plain and clear claims of Plaintiff's Patents.

To further their misrepresentation, and expose the motive for the same, Defendant pushed on, stating:

> Cherdak's <u>admission and disclaimer</u> could not be more clear on this point—if LEDs

3

> remain activated after the termination of a jump, when the shoe returns to the ground, the LEDs do not provide an indication of the amount of time "off the ground and in the air." This reasoning necessarily applies equally to LEDs that are activated for less than all of the time that the shoe is off the ground and in the air, as well. Cherdak cannot now reclaim through his proposed constructions the exact same ground that he unequivocally disclaimed in order to obtain the '445 Patent over Rodgers. *See Computer Docking Station Corp. v. Dell*, 519 F.3d 1366, 1374 (Fed. Cir. 2008) (patentee may limit the meaning of a claim term by "characterizing the invention in a way to try to overcome rejections based on prior art").

ECF 127 at 13 (emphasis supplied).

A review of the prosecution history makes clear that Defendant's statements are patently false. During the initial examination that lead to the issuance of the '445 Patent, Plaintiff's attorney stated the following:

> On March 18, 1994 the Examiner telephoned applicant's attorney to indicate that the Examiner would likely withdraw the §112 rejection if applicant incorporates, in the response to the outstanding office action, those arguments presented orally at the interview. The Examiner also suggested that applicant consider U.S. Patent Nos. 4,848,009 (Rodgers, not previously of record) and 4,578,769 (Frederick, of record). The Examiner stated that the Rodgers patent discloses, a shoe containing a timer and lights, wherein the timer turns off the lights when the shoe is stable. The Examiner offered the opinion that the operation of the circuitry in the Rodgers patent could be interpreted to produce a measurement of the time that the shoe is in the air by "looking at the lights"[1] ….Considering first the Rodgers patent, the shoe disclosed therein is specifically designed to energize LEDs when the shoe is tilted (i.e., oriented other than with its sole

---

[1] The USPTO and the Patent Examiner never asserted a prior art rejection under 35 USC § 102 or § 103 against the claims of the '445 patent, based on Rogers '009 or otherwise. Any such rejection would have been based on improper hindsight based on the fact that nothing in the record demonstrates that the Patent Examiner was relying on anything other than the '445 patent application and its disclosure of flashing LEDs when he "offered his opinion" about "looking at the lights." Improper hindsight is a situation where an examiner gleans information solely from Applicant's specification to make out the asserted prior rejection. The Manual of Patent Examining Procedure at § 2142 states that "impermissible hindsight must be avoided and the legal conclusion must be reached on the basis of the facts gleaned from the prior art." The Supreme Court in *KSR International Co. v. Tele- flex Inc.*, 550 U.S. 398 (2007) noted that the analysis supporting a rejection under 35 U.S.C. §103 should be made explicit. And, the Federal Circuit has stated that "rejections on obviousness cannot be sustained with mere conclusory statements; instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *In re Kahn*, 441 F.3d 977, 988, 78 USPQ2d 1329, 1336 (Fed. Cir. 2006); *See also KSR,* 550 U.S. at 398 (quoting Federal Circuit statement with approval).

horizontal).   In this regard, a mercury switch is disclosed by Rodgers as the primary embodiment of the sensor. The LEDs in the Rodgers shoe are sometimes energized while the shoe remains on the ground (e.g., when the wearer turns his/her foot, stands on his/her toes, rocks on his/her heels, etc.). In addition, if the wearer jumps, the LEDs do not become energized unless the shoe is tilted. Further, when the wearer lands after a jump, the LEDs, if energized during the jump, will not become de-energized until the shoe is horizontal and the mercury in the switch becomes positionally stabilized. Accordingly, the LEDs in the Rodgers apparatus do not provide an indication of hang time off the ground and in the air.

**Exhibit 4**, Response to Office Action dated April 21, 1994, at pages 8-11.

**Clearly,** (1) the USPTO never rejected the claims of the '445 patent based on prior art (Rogers '009), (2) the USPTO never argued about anything related to the prior art – at best, the USPTO suggested that Mr. Cherdak "consider" that reference, and (3) Mr. Cherdak did not make any clear and unambiguous disavowal over any prior art (including Rogers '009) and, instead, merely indicated that device in the Rogers '009 patent could not be used to facilitate time-based indications because of the operational characteristics of the mercury switch used in the Rogers' patent.  As Mr. Cherdak stated many years ago, the device in the Rogers '009 patent operates such that "if the wearer jumps, the LEDs do not become energized unless the shoe is tilted" and the ball of mercury in the mercury switch is not caused to connected the contacts of the switch.

If the Court were to adopt or otherwise rely on Defendant's falsehoods, Defendant would then seek to improperly apply the law and principles announced in *Computer Docking Station Corp.*, upon which Defendant heavily relies in its *Markman* brief. *See Computer Docking Station Corp. v. Dell*, 519 F.3d 1366, 1374 (Fed. Cir. 2008). In particular, the Federal Circuit held in *Comptuer Docking Station Corp.* that:

> Statements made during prosecution may also affect the scope of the claims. *Rexnord*, 274 F.3d at 1343. Specifically, "a patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution." *Purdue Pharma L.P. v. Endo Pharms., Inc.*, 438 F.3d 1123, 1136 (Fed.Cir.2006). **A patentee could do so, for example, by clearly characterizing the invention in a way to try to overcome <u>rejections based on prior art</u>….** Prosecution disclaimer does not apply to an

ambiguous disavowal. *See N. Telecom Ltd. v. Samsung Elec. Co.,* 215 F.3d 1281, 1293-95 (Fed.Cir.2000) (holding that prosecution disclaimer did not "support the judicial narrowing of a clear claim term" because the inventors' statements were amenable to multiple reasonable interpretations); *Pall Corp. v. PTI Techs. Inc.,* 259 F.3d 1383, 1393-94 (Fed.Cir.2001) (remanding because the scope of disclaimer over the prior art reference was ambiguous), *vacated on other grounds,* 535 U.S. 1109, 122 S.Ct. 2324, 153 L.Ed.2d 152 (2002). Prosecution disclaimer does not apply, for example, if the applicant simply describes features of the prior art and does not distinguish the claimed invention based on those features. *See Eolas Techs., Inc. v. Microsoft Corp.,* 399 F.3d 1325, 1337 (Fed.Cir.2005). And if the specification expressly defines a claim term and "remarks made to distinguish claims from the prior art are broader than necessary to distinguish the prior art, the full breadth of the remark is not `a clear and unambiguous disavowal of claim scope as required to depart from the meaning of the term provided in the written description.'" *3M Innovative Props. Co. v. Avery Dennison Corp.,* 350 F.3d 1365, 1373 (Fed. Cir.2003) (quoting *Storage Tech. Corp. v. Cisco Sys., Inc.,* 329 F.3d 823, 833 (Fed. Cir.2003)).

*Id.* at 1374-1375.

In this case, Plaintiff made no clear and unmistakable disavowal of claim scope in connection with a requisite prior art rejection as mandated by Federal Circuit. *Id.* Plaintiff did not even face a prior art rejection based on the prior art alleged by Defendant in its Markman Brief.

Unlike the instant case, where the USPTO never asserted a <u>prior art based rejection</u> against any claims during initial examination of the '445 patent, the USPTO, when dealing with the patent asserted in *Computer Docking Station*, certainly rejected asserted claims based on prior art under 35 U.S.C. §§ 102 and 103. *Id.* at 1372 ("During prosecution, the examiner rejected several claims as anticipated and obvious in view of U.S. Patent No. 5,030,128 to Herron et al. ('128 patent or Herron)"). Accordingly, in *Computer Docking Station*, the Federal Circuit found the requisite disavowal of certain claim scope over the Heron '128 Patent because there had been a clear and unmistakable disavowal of scope during prosecution by way of attempting to overcome a prior art based, substantive rejection of the claims by the USPTO.

Here, the only rejection of Plaintiff's claims in the application giving rise to the '445 patent

6

was one (1) single rejection based on formality grounds of §112 of the Patent Act. It is fundamentally misleading to describe a §112 rejection as a prior art rejection. Plaintiff never faced a prior art rejection during initial examination. As such, *Computer Docking Station*, and the Doctrine of Claim Scope Disavowal, do not apply *sub judice*.

Here, no claims were ever rejected on prior art grounds based on U.S. Patent 4,848,009 to Rogers or otherwise during initial examination of the application giving rise to the '445 patent. To say otherwise is simply not true. Defendant has deliberately made factual misrepresentations to the Court in an attempt to sway the Court toward application of an inapplicable legal doctrine – that of Claim Scope Disavowal – in the instant case. Such falsification of important facts in the context of *Markman* briefing in an effort to get the Court to apply limiting doctrine is egregious misconduct warranting the relief requested.

This is not the first time that Plaintiff has had to address this issue with Defendant. When Defendant filed its Motion for Summary Judgment Brief (ECF 87), Defendant made misrepresentations relating to the same issues addressed herein. Plaintiff addressed that issue with Defendant, *See* **Exhibit 1**, but the Court's denial *sua sponte* of Defendant's Summary Judgment Motion (ECF 99) eliminated the need for this issue to be raised with the Court.

In that October 17-18, 2011 e-mail exchange, Plaintiff advised Defendant of the erroneous assertion and asked Defendant to withdraw its motion:

> Bill,
>
> …
>
> Ms. Bass' analysis of the '445 prosecution history *vis-a-vis* the Rodgers '009 patent (found on Page 16 of Defendant's brief) is demonstrably and materially false.
>
> Ms. Bass selectively quoted from the prosecution history and stated that the truncated quote was made "in order to overcome a rejection over this prior art [Rodgers '009 Patent]" and further stated that "Cherdak argued that the lights of the shoe disclosed in

7

the Rodgers patent were unrelated to whether the shoe was off the ground and in the air."

This materially and deliberately misrepresents (to the Court) the prosecution history. Mr. Cherdak's claims were never rejected based on the Rodgers patent.

Simply put, each and every fundamental argument made by Defendant is based on a factual misrepresentation. As such, it is our position that Defendant's Motion is without merit and is being prosecuted in bad faith. In order to avoid troubling the Court with this issue, and to avoid further cost and expense, I renew my request that you withdraw this Motion no later than Noon (EDT) tomorrow, October 19, 2011. If you refuse to do so, I will proceed as previously stated.

Thank you,

Dan

*See* **Exhibit 1**, October 18-19, 2011 e-mail exchange between Bill Rudy and Daniel Ward. In response, Defendant threatened Plaintiff with motions for sanctions, stating that Plaintiff's "threats, together with this case generally, borders on the frivolous. Thus, we intend to seeks [*sic*.] sanctions for your clients [*sic*.] abuses.".[2] *See* **Exhibit 1.**

Plaintiff tries to resolve an issue without Court intervention, and Defendant threatens sanctions. Sanctions? For discovering outright falsehoods by Defendant? For alerting Defendant about these falsehoods? And for inviting Defendant to withdraw a meritless and misleading motion? Defendant's threats make no sense. Plaintiff anticipates more threats of sanctions, but the record must be clear. Defendant's <u>material misrepresentations</u> about the prosecution history of the Cherdak Patents – made with the clear intention of wrongfully limiting the scope of the Cherdak Patents – simply cannot be allowed.

## III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court GRANT

---

[2] Threatening to seek sanctions against Plaintiff, and telling Plaintiff his patents, and this lawsuit are frivolous, are a few of Defendant's favorite things. (Sung to the tune of "These are a few of my favorite things" by Rodgers & Hammerstein).

Plaintiff's Motion to Strike.

Respectfully submitted,

   /S/ Daniel S. Ward
Daniel S. Ward VSB 45978
Ward & Ward PLLC
2020 N Street, NW
Washington, DC 20036
(202) 331-8160
(202) 503-1455 (facsimile)
dan@wardlawdc.com

ATTORNEY FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 19th day of December 2011, I electronically filed the foregoing with the Court of the Court using the CM/ECF system, which will then send, as appropriate, a notification of such filing to the following:

Lisa M. Bass, Esq.
Lathrop & Gage DC, PLLC
1300 Eye Street, NW Suite 1050 E
Washington, DC 20005
(202) 469-6936 (direct dial)
(202) 469-6949 (facsimile)
lbass@lathropgagedc.com
Counsel for Defendant Rack Room Shoes

  /S/ Daniel S. Ward
Daniel S. Ward